**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNILOC 2017, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | NO. 2:18-cv-00497-JRG-RSP<br>NO. 2:18-cv-00501-JRG-RSP<br>NO. 2:18-cv-00551-JRG-RSP<br><br>*FILED UNDER SEAL* |

**PLAINTIFF UNILOC 2017, LLC'S OPPOSITION
TO DEFENDANT GOOGLE LLC'S
<u>MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**

**TABLE OF CONTENTS**

I. Introduction……………………………………………………………………………1

II. Response to Statement of Issues……………………………………………………….3

III. Response to Statement of Undisputed Material Facts………………………………….7

IV. Legal Standards………………………………………………………………….……10

V. Background……………………………………………………………………………12

    A. Google's Motion for Summary Judgment Should be Denied Because Disputes of Material Fact Exist……………………………………………………………….12

    B. Google's Motion for Summary Judgment Should be Denied Until Uniloc Completes Discovery on the Operation of the Accused Products……………….14

VI. Conclusion…………………………………………………………………………….15

Certificate of Service…………………………………………………………………………..16

Certificate to File Under Seal……………………………………………………………………16

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) .............................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................................ 11

*Celotex v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................................................ 11

*Fontenot v. Upjohn Co.*,
  780 F.2d 1190 (5th Cir. 1986) .................................................................................................. 11

*Intellectual Ventures I LLC v. T Mobile USA, Inc.*,
  No. 2:17-CV-00577-JRG, 2018 WL 5809267 (E.D. Tex. Nov. 6, 2018) ................................ 11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) .................................................................................................. 11

*Raby v. Livingston*,
  600 F.3d 552 (5th Cir. 2010) .................................................................................................... 12

*Strearns Airport Equip. Co. v. FMC Corp.*,
  170 F.3d 518 (5th Cir. 1999) .................................................................................................... 12

*Weaver v. Harris*,
  486 F. App'x 503 (5th Cir. 2012) ............................................................................................. 12

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................... 11

Fed. R. Civ. P. 56(d) ................................................................................................................. 12, 14

## I. INTRODUCTION

Google LLC's ("Google") Motion for Summary Judgment of Non-Infringement ("Google Motion"), boiled down to its essence, seeks summary judgment on Google's mere pronouncement that it does not infringe. There has not been substantive technical discovery in these cases to date, nor has there been a claim construction. Yet Google seeks summary judgment based on a narrow reading of Uniloc 2017, LLC's ("Uniloc") infringement contentions and the self-serving, carefully crafted declarations of three Google engineers. Importantly, the submitted declarations are limited to characterizations of what Google's accused products purportedly *do not* do in coding and rendering digital video data relative to certain industry terminology, but the declarations are silent as to what the accused products *do* in coding and rendering digital video data and to whether Google has features corresponding to the patents-in-suit.

Google's first declarant, ▮▮▮▮▮▮▮ Steven Robertson, did not allege Google's lack of use of the technology in the patents-in-suit. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Also, his declaration was limited to encoding on "Pixel" mobile phones[2] – as opposed to other products like Youtube, Google Cloud, or Avanto where the majority of Google's encoding actually occurs. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1



Google's second declarant, ▮▮▮▮▮▮▮▮ Thierry Fouco, also did not allege Google's lack of use of the technology in the patents-in-suit. Mr. Fouco's declaration is silent on the accused features corresponding to FMO. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, his affirmative statements in his declaration (which lacks foundation)[7] were specifically limited to one codec – H.264 – when other codecs are listed in the contentions such as VP9 and H.265 (a.k.a HEVC). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Google's third declarant, ▮▮▮▮▮▮▮▮ Oztan Harmanci, also did not allege Google's lack of use of the technology in the patents-in-suit. Mr. Harmanci's declaration mentions nothing of Youtube, Google Play Movies, Youtube TV, Stadia, or Duo products. Moreover, the affirmative statements in his declaration (which contain no basis)[9] were specifically limited to one codec – H.264 – when other codecs are listed in the contentions such as VP9 and H.265 (a.k.a HEVC). Further, the evidence contradicts his affirmative statements – showing both use of FMO by Google and others.[10]

Compounding the above problems, Google's productions in these cases have been deficient. Uniloc is still seeking essential technical discovery into the function of the accused

---

[5] *See* attachments 8, 9, and 10 to Loveless Declaration (Exhibit A).
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see also* attachments 11 and 12 to Loveless Declaration (Exhibit A).
[9] There is no information concerning how the declarant came to a determination – just a conclusion. Likewise, there is no indication as to what products, if any, are encompassed by his statements.
[10] *See* attachments 1 through 10 to Loveless Declaration (Exhibit A).

2

products, which will provide evidence of how the accused products operate.[11] Until then, there are questions of material fact as to how the accused products operate that prevent the grant of an early summary judgment in these cases.

Attached as Exhibit A is the Declaration of Ryan Loveless Pursuant to Fed. R. Civ. P. 56(d) setting forth the reasons Uniloc cannot present facts essential to justify its opposition at this juncture. Google's Motion is premature and should be denied or deferred pending the completion of discovery.

## II. RESPONSE TO STATEMENT OF ISSUES

Google's presentation of the issue relies on a narrow reading of Uniloc's infringement contentions and ignores that Google can infringe the claims of U.S. Patent Nos. 6,329,934 ("the '934 Patent"), 6,452,515 ("the '515 Patent"), and 7,012,960 ("the '960 Patent") (collectively, "the Asserted Patents") without using SP/SI frame technology or Flexible Macroblock Ordering. Google attempts to argue that "[it] does not use the SP/SI frames or FMO technology upon which Uniloc's infringement allegations depend" and should thus be granted summary judgment. Google Motion at 1. But Google ignores the fact that Uniloc's patents do not require the use of "SP/SI" frames or "FMO" technology in order to infringe. Uniloc's infringement contentions are just that – contentions – and set forth Uniloc's pre-discovery infringement theories as to what is occurring in the accused products. The infringement contentions cite to SP/SI frames and FMO technology as examples of what Uniloc contends is happening in the accused products based on its pre-suit investigation before full discovery in the case and before claim construction.

In the -497 case, for method claim 1 of the '934 Patent, Uniloc's infringement contentions

---

[11] The parties are working toward resolving a discovery dispute around the insufficiency of Google's productions to date. In addition to issues concerning a lack of core Google technical productions pursuant to P.R. 3-4(a), Google has also refused to produce information "reasonably similar" to the accused products.

assert that "[t]he accused products practice a method of modifying data (D), the data (D) having been coded so as to obtain coded data (CD)" by pointing out that, "*[f]or example*, YouTube supports streaming of videos to end-user devices such as desktops, smartphones, TVs, etc. using multi-bitrate streams in different formats including H.264." Google's Motion Ex. B at 1 of 23 (emphasis added). Uniloc further asserts that "H.264 supports SP and SI frames" (*id*. at 5 of 23) and that "[f]rom encoding process of SP frames, it is observed that SP frames are obtained after modification of coded data" (*id*. at 9 of 23). Also in the -497 case, for apparatus claim 3 of the '934 Patent, Uniloc's infringement contentions assert that "[t]he accused products comprise a data-modifying assembly for modifying data (D), the data (D) having been coded so as to obtain coded data (CD)" by citing to the chart for claim 1 preamble and stating "YouTube provides transcoding of videos after they are uploaded. The transcoding process requires modification of video data into different formats e.g. H.264 format." *Id*. at 17 of 23. Uniloc further contends that "[s]imilarly, Google Cloud provides a system for video coding using H.264. Google Cloud provides an infrastructure for transcoding a video stream. Video transcoding is the conversion of a video stream from one digital encoding format to another. Video transcoding requires a decoder to decode the original video data and an encoder to encode the modified data" and that "[t]he video streams on YouTube and Google Cloud are coded in various formats e.g. H.264. H.264 supports different frames including SP frames. The coding process of SP frames takes place with the help of several units or blocks. These units or blocks modify data as per the requirements and together form a data-modifying assembly." *Id*. at 19-20 of 23. For both claims 1 and 3 of the '934 Patent, the issue is not whether Google's accused products use SP/SI frames, as Google attempts to narrowly frame it. The issue is whether the accused products use, by whatever name, the steps of: "partially decoding the coded data so as to obtain blocks of prediction-error pixels; modifying the blocks of

4

prediction-error pixels so as to obtain modified partially decoded data; and complementary coding the modified partially decoded data, so as to obtain coded modified data" (*see* '934 Patent claim 1) and whether the accused products have a data-modifying assembly comprising: a partial decoder for partially decoding the coded data so as to obtain blocks of prediction-error pixels; a data modifier for modifying the blocks of prediction-error pixels so as to obtain modified partially decoded data; and a complementary coder for complementary coding the modified partially decoded data, so as to obtain coded modified data (*see* '934 Patent claim 3). Google's submitted declarations are silent as to whether the accused products undertake the steps of claim 1 or have a data-modifying assembly comprised of the elements as claimed in claim 3 of the '934 Patent.

In the -501 case, for claim 1 of the '515 Patent, Uniloc's infringement contentions assert that the accused products "provide a means for associating, to each of said parts, a specific label indicating a position of the part in the window" by citing that "[t]he accused products provide software encoders which support H.264 video encoding/decoding, where each macroblock is associated with a macroblock address and macroblock location (i.e. specific label) that indicates its position in picture." Google's Motion Ex. D at 15 of 33. Uniloc further cites that the "H.264 standard supports encoding of macroblocks in random order" (*id*. at 21 of 33) and that "H.264 uses a basic structure called slice, to packetize video. A slice is a collection of macroblocks. Flexible Macroblock Ordering (FMO) is an error resilience technique proposed by JVT (Joint Video Team - ITU). Until the adoption of FMO, the macroblocks within slices were always transmitted in scan order with continuously ascending addresses. FMO allows the transmission of macroblocks in an order other than raster scan and supports scattered slices" (*id*. (internal citations omitted)). For claim 1 of the '515 Patent, the issue is not whether Google uses FMO, as Google again attempts to narrowly frame the issue. The issue is whether the accused products have, by whatever name,

5

a "video encoder for processing a sequence of animated pictures, said encoder comprising": "means for dividing a screen window occupied by said sequence into X rows and Y columns"; "means for separately encoding each one of the X·Y parts of each picture of the sequence thus obtained"; and "means for associating, to each of said parts, a specific label indicating a position of the part in the window, and for encoding these labels in a random order." See '515 Patent claim 1. Google's submitted declarations are silent as to whether the accused products have a video encoder comprised of the elements as claimed in claim 1 of the '515 Patent.

In the -551 case for claims 1, 4, and 5 of the '960 Patent, Uniloc's infringement contentions assert that the accused product "provides encoders for seamless delivery to multiple formats such as H.264, HEVC, etc. via adaptive bitrate streaming…"; and that "[t]he switching among multiple bitstreams at different bit rates is typically accomplished by inserting some special frames in the bitstreams, known as keyframes. SP/SI frames (as described in H.264) are one of the key frames that exploit temporal redundancy by motion-compensated predictive coding. The process of transcoding using SP frames includes the decoding process, which involves the inverse quantization (i.e., $Qs_1^{-1}$) of the current picture sequence/video to produce the first transformed signal…" Google Motion Ex. F at 8 of 28. For the claims of the '960 Patent, the issue is not whether Google's accused products use SP/SI frames, as Google attempts to narrowly frame it. The issue is whether the accused products use, by whatever name, the method of transcoding a primary encoded signal comprising a sequence of pictures into a secondary encoded signal using the method steps claimed in claims 1, 4, and 5 of the '960 Patent. Google's submitted declarations are silent as to whether the accused products perform transcoding a primary encoded signal comprising a sequence of pictures into a secondary encoded signal using the steps as claimed in claims 1, 4, and 5 of the '960 Patent.

### III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

Uniloc agrees that it filed twenty-one patent suits against Google in the Eastern District of Texas, but it does not agree that "the cases allege infringement based on a clear misunderstanding of Google products, including by accusing functionalities not incorporated into the accused technology." Google Motion at 1. Uniloc has presented infringement contentions that set forth its pre-discovery infringement theories as to how the claims of the Asserted Patents read on features of the accused products as required by P.R. 3-1.

Uniloc agrees that its "complaints generally assert that the video encoding techniques used in YouTube's and Google Cloud M&E's video-delivery systems infringe Uniloc's patents." Google Motion at 3. Uniloc further agrees that it "specifically asserts that Google infringes the '934 and '960 patents, respectively, because YouTube and Google Cloud M&E perform video encoding under the H.264 encoding standard," but Uniloc disagrees that its assertions are limited to Google's "implement[ion] [of] an allegedly infringing component of that standard known as SP and SI frames." *Id*. While Uniloc's infringement contentions point to SP/SI frames as a potential example of how Google's accused products meet the claim limitations, the claim limitations are met by "partially decoding the coded data so as to obtain blocks of prediction-error pixels; modifying the blocks of prediction-error pixels so as to obtain modified partially decoded data; and complementary coding the modified partially decoded data, so as to obtain coded modified data"—whether through SP/SI frames or some other technique.

Uniloc cannot concede that "Google does not implement SP/SI frames" without discovery. Uniloc does not agree that "no other video-streaming service has [implemented SP/SI frames] either."

Uniloc agrees that it "alleges that Google infringes the '515 patent because Google Cloud M&E performs video encoding under the H.264 standard" but disagrees that its allegations are

7

limited to Google "using another allegedly-infringing feature called Flexible Macroblock Ordering ("FMO")." Google Motion at 3. While Uniloc's infringement contentions point to FMO as a potential example of how Google's accused products meet the '515 Patent claim limitations, the claim limitations are met by having a "video encoder for processing a sequence of animated pictures, said encoder comprising": "means for dividing a screen window occupied by said sequence into X rows and Y columns"; "means for separately encoding each one of the X·Y parts of each picture of the sequence thus obtained"; and "means for associating, to each of said parts, a specific label indicating a position of the part in the window, and for encoding these labels in a random order." See '515 Patent claim 1.

Uniloc cannot concede that "Google does not currently implement FMO technology" without discovery. Also, Uniloc does not agree that "no other video-streaming service has [implemented FMO technology] either." The evidence shows the contrary. [12]

Without discovery, Uniloc cannot concede that "[n]either YouTube nor Google Cloud M&E uses, or has the capability to use, SP/SI frames or FMO"; that "Google Cloud M&E does not use, has never used, and has never had the capability to use SP and/or SI frames for video encoding in the H.264 format"; that "[t]he accused Google Cloud M&E does not use, has never used, and has never had the capability to use FMO for the encoding of video in the H.264 format"; or that "Google engineers are not aware of SP/SI frames or FMO being used by any major internet video providing service for the encoding and delivery of H.264 video." Google Motion at 4.

Google's assertion that "Uniloc has had multiple avenues at its disposal to determine that Google does not use these accused technologies" (Google Motion at 4) ignores the fact that the issue is not whether Google's accused products use SP/SI frames or FMO technologies, but rather

---

[12] *See* attachments 1 through 10 to Loveless Declaration (Exhibit A).

whether the accused products practice the patents. Uniloc's infringement contentions cite to SP/SI frames and FMO as potential examples of how Uniloc contends that the accused products practice the claims of the Asserted Patents, but discovery may show that Google practices the claims of the patents through other means. *See* § II, *supra*. For example, Google may implement the same or substantially the same actions as are undertaken for SP/SI frames and FMO without using those labels in its implementation. Google's statement that it "made source code for YouTube and Google Cloud M&E available" and that "Uniloc has made no effort to review this source code and consequently did not amend its infringement contentions to address Google's code within thirty days after the source-code disclosure" (Google Motion at 4-5) is disingenuous because Google has not produced documents that would allow meaningful review of the source code, such as software architecture documents and software description documents. As demonstrated by Exhibit K to Google's Motion, counsel for Uniloc responded to Google that "[w]e expect to respond after Google complies with LR 3-4 and provides specifications, schematics, … and other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality." However, Google has not provided documentation on the structure, function, and operation of the accused products as required; and, Google refuses to provide production on "reasonably similar" instrumentalities. Merely making unknown source code available to Uniloc does not fulfill Google's LR 3-4 obligations, nor is it sufficient proof of how the accused products operate. Uniloc sent deficiency notices to Google on November 15, 2019 and is actively seeking to obtain the discovery requested. *See* Exhibits B, C, and D.

Google's assertion that "publicly available video-analysis tools show that the Accused Instrumentalities do not use SP/SI frames or FMO," and criticism of Uniloc for not employing such tools here despite using them in another case, once again fails to acknowledge the real issue

9

in these cases. Google frames the issue, based on a narrow reading of Uniloc's infringement contentions, to be whether or not the accused products use SP/SI frames or FMO technology rather than whether the accused products practice the claims of the Asserted Patents. Using video-analysis tools to discern whether the accused products use SP/SI frames or FMO technology will not reveal whether the accused products accomplish the steps of the method claims or have the components of the apparatus claims of the asserted patents. Uniloc believes that discovery into the accused products will reveal that the accused products operate in a manner that infringes the Asserted Patents—regardless of whether the accused products meet the definition of using SP/SI frames or FMO technology.

Uniloc disagrees that "any investigation into the encoding industry would have revealed that SP/SI frames and FMO simply are not used—and have not been used—in the industry at large." Google Motion at 5. The evidence shows the contrary.[13]

Google's assertion that "Google's counsel repeatedly has informed Uniloc that Google does not use this technology, but Uniloc has made no effort to address the shortcomings in its cases," as with other assertions noted above, is based on a narrow reading of Uniloc's infringement contentions. Google incorrectly frames the issue to be whether or not the accused products use SP/SI frames or FMO technology instead of whether the accused products practice the claims of the Asserted Patents. Google has offered no evidence as to how the accused products actually operate to support its non-infringement motion for summary judgment.

## IV. LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[13] *See* attachments 1 through 12 to Loveless Declaration (Exhibit A).

56(a). Any evidence must be viewed in the light most favorable to the nonmovant. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id*. at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If the movant bears the burden of proof on an issue at trial, then the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant [summary] judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). To justify a continuance, the Rule 56(d) motion must demonstrate "1) why the movant needs additional discovery[,] and 2) how the additional discovery will likely create a genuine issue of material fact." *See, Strearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999); *Weaver v. Harris*, 486 F. App'x 503, 505 (5th Cir. 2012). Rule 56(d) discovery motions are "broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

## V. ARGUMENT

### A. Google's Motion for Summary Judgment Should be Denied Because Disputes of Material Fact Exist

Questions of material fact exist regarding the operation of the accused products. The declarations of Google engineers submitted by Google in support of its motion only address the issue as narrowly framed by Google – whether their accused products use SP/SI frames or FMO technology. The declarations are silent as to how the accused products operate.

In the -497 case, questions of material fact exist as to whether and how the accused products partially decode coded data so as to obtain blocks of prediction-error pixels, modify the blocks of prediction-error pixels so as to obtain modified partially decoded data, and complementary code the modified partially decoded data, so as to obtain coded modified data as required by claim 1 of the '934 Patent. Uniloc laid out its theory as to how the accused products perform these steps, by, for example, using SP/SI frames. But SP/SI frames are not the only way data bitstreams can be modified to meet the claim limitations. Google's assertion that it does not use SP/SI frames is not

dispositive of the possibility that the accused products infringe. Uniloc is entitled to discover how the Google accused products operate. Similarly, in the -497 case, questions of material fact exist as to whether the accused products have a data-modifying assembly comprising: a partial decoder for partially decoding the coded data so as to obtain blocks of prediction-error pixels; a data modifier for modifying the blocks of prediction-error pixels so as to obtain modified partially decoded data; and a complementary coder for complementary coding the modified partially decoded data, so as to obtain coded modified data as required by claim 3 of the '934 Patent. Uniloc's pre-discovery, pre-claim construction theory of infringement pointed to SP/SI frames as support for having a data-modifying assembly comprised of the components in claim 3. Google's assertion that it does not use SP/SI frames is not dispositive of whether the accused products infringe. Google has presented no evidence that its products do not have a data-modifying assembly comprising: a partial decoder for partially decoding the coded data so as to obtain blocks of prediction-error pixels; a data modifier for modifying the blocks of prediction-error pixels so as to obtain modified partially decoded data; and a complementary coder for complementary coding the modified partially decoded data, so as to obtain coded modified data.

In the -501 case, questions of material fact exist as to whether and how the accused products have a "video encoder for processing a sequence of animated pictures, said encoder comprising": "means for dividing a screen window occupied by said sequence into X rows and Y columns"; "means for separately encoding each one of the X·Y parts of each picture of the sequence thus obtained"; and "means for associating, to each of said parts, a specific label indicating a position of the part in the window, and for encoding these labels in a random order" as claimed in claim 1 of the '515 Patent. Although Uniloc pointed to FMO technology as support in its infringement contentions, FMO is not claimed, and there are other ways to divide a screen window into rows

and columns, encode each of the row/column parts, associate those parts with a label indicating a position of the part in the window, and encode the labels in a random order without FMO. Google's declarations simply state that the accused products do not use FMO. Google offers no evidence that it does not have a video encoder comprised of the elements as claimed in claim 1 of the '515 Patent.

In the -551 case, questions of material fact exist as to whether and how the accused products transcode a primary encoded signal comprising a sequence of pictures into a secondary encoded signal using the method steps claimed in claims 1, 4, and 5 of the '960 Patent. Uniloc cited to SP/SI frames for support in its infringement contentions, but SP/SI frames are not claimed or required. Google's declarations simply state that the accused products do not use SP/SI frames. Google offers no evidence that it does not perform the claimed in claims 1, 4, and 5 of the '960 Patent.

Until such time as Uniloc has completed discovery into the operation of the accused products, there are disputes of material fact as to that operation and summary judgment is therefore premature.

    **B.    Google's Motion for Summary Judgment Should be Denied Until Uniloc Completes Discovery on the Operation of the Accused Products**

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Here, for the reasons stated above, the Court should deny or defer considering Google's premature motion for summary judgment until Uniloc is afforded an opportunity to take discovery into the operation of the accused products.

As set forth in the Declaration of Ryan Loveless, attached hereto as Exhibit A, Uniloc needs discovery into the operation of the accused products. That additional discovery will likely show that the accused products are comprised of a data-modifying assembly as claimed in the '934 Patent and a video encoder as claimed in the '515 Patent and that they perform the method steps of partial decoding, modifying, and complementary coding of data as claimed in '934 Patent and transcoding steps of the '960 Patent.

Uniloc should be afforded the opportunity to take discovery into the operation of the accused products, and Google's Motion should be denied or deferred as premature.

## VI. CONCLUSION

Because disputes of material fact exist as to the operation of the accused products, Google's Motion should be denied or deferred until Uniloc has taken technical discovery into the operation of the products.

Dated: December 13, 2019          Respectfully submitted,

/s/ James L. Etheridge

James L. Etheridge, TX Bar No. 24059147
Ryan S. Loveless, TX Bar No. 24036997
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com

*Attorneys for Plaintiff Uniloc 2017, LLC*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2019 the foregoing document was served upon all counsel of record by email.

*/s/ James L. Etheridge*
James L. Etheridge

## CERTIFICATE TO FILE UNDER SEAL

I certify that this response is being filed under seal pursuant to the protective order entered in this case.

*/s/ James L. Etheridge*
James L. Etheridge